**GUARDIAN CONSTRUCTION CO., a Delaware Corporation and Stephen Batzel, t/a Batzel Construction Co., Plaintiffs,**

v.

**TETRA TECH RICHARDSON, INC., a Delaware Corporation, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: July 11, 1990.
Decided: Aug. 15, 1990.

David S. Lank, of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, for plaintiffs.

Frederick W. Iobst, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant.

## OPINION

BARRON, Judge.

Before the Court is an action filed by Plaintiffs Guardian Construction Company (Guardian) and Stephen Batzel, t/a Batzel Construction Company (Batzel) against Tetra Tech Richardson, Inc. (TTR). Guardian and Batzel seek damages from TTR which together total $203,500 plus interest and costs arising out of a construction project involving the parties herein, the State of Delaware, Department of Natural Resources and Environmental Control (DNREC) and Landmark Engineering, Inc. (Landmark).[1]

The construction project giving rise to this action, known as the Augustine Breakwater Project (project), was initiated by DNREC in order to make certain improvements to the Augustine Beach breakwater structure. TTR was the design engineer hired by DNREC to prepare contract documents and specifications for the project. In reliance upon these plans and specifications prepared by TTR pursuant to its contract with DNREC, as well as certain technical information conveyed by TTR to Plaintiffs and others at a pre-bid meeting, Plaintiffs prepared and submitted a bid to DNREC on the construction work to be performed on the project.

Plaintiffs' bid was successful and Guardian was hired by DNREC as general contractor on the project. Guardian then hired Batzel as subcontractor to provide labor and materials on the project in accordance with the plans and specifications prepared by TTR. At all times relevant hereto, neither Guardian nor Batzel had a direct contractual relationship with TTR.

After commencing work on the project, Plaintiffs discovered that the tidal heights and project benchmark had been miscalculated by TTR. These initial miscalculations were used by TTR to develop the project plans and specifications. As indicated, the project plans and specifications were in

---

1. DNREC and Landmark were originally joined as third-party defendants in this action by TTR. *On December 5, 1989, counsel for TTR and DNREC* filed a stipulation dismissing DNREC from this action. On July 12, 1990, this Court granted Landmark's unopposed motion for summary judgment. Therefore, the only parties involved in the instant motion are Plaintiffs Guardian and Batzel and Defendant TTR.

turn used by Plaintiffs to formulate their bids on the project. As a result of TTR's miscalculations, Batzel claims that it was unable to perform its work on the project as planned. According to Plaintiffs, TTR's miscalculations resulted in additional labor and equipment costs to Batzel of $185,000 and lost profits to Guardian totalling $18,-500. On May 9, 1989, Guardian and Batzel filed this action against TTR alleging negligent misrepresentation, negligence and breach of contract. On July 2, 1990, TTR filed the instant motion for summary judgment pursuant to Superior Court Civil Rule 56.

TTR's motion presents two interesting and difficult questions of law. The first is whether or not Plaintiffs may recover purely economic losses under their negligence claims against TTR absent privity of contract. The second question is whether or not Plaintiffs were intended third-party beneficiaries of the contract between DNREC and TTR and therefore entitled to maintain a breach of contract claim against TTR thereon.

## STANDARD OF REVIEW

In weighing a motion for summary judgment under Rule 56, the Court must examine the present record, including pleadings, depositions, admissions, affidavits and answers to interrogatories. The facts must be viewed in a light favorable to the non-moving party (in this case Plaintiffs), although uncontroverted evidence offered in support of the motion must be accepted as true. The moving party must show that, on unquestioned facts he is entitled to judgment as a matter of law. *See Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* Del.Super., 312 A.2d 322 (1973); *Matas v. Green,* Del.Super., 171 A.2d 916 (1961). Indeed, the parties herein do not dispute the material facts giving rise to this litigation. It is therefore, the function of the Court at this stage of the case simply to test the legal sufficiency of the claims asserted by Plaintiffs against the body of law applicable thereto.

## PLAINTIFFS' NEGLIGENCE CLAIM

As indicated, Plaintiffs seek to impose liability upon TTR for negligent preparation of the project plans and specifications and for negligent misrepresentation of material information relied upon by Plaintiffs in calculating their project bids. TTR maintains, however, that as a matter of law, the lack of contractual privity between it and Plaintiffs and the fact that Plaintiffs seek purely economic damages as opposed to damages arising out of personal injury or property damage, effectively bars recovery on both negligence theories.

Traditionally, attempts by injured third-parties to recover for damages arising out of the negligent performance of a contractual duty generally failed because of lack of privity. *See generally Rozny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656 (1969). *See also* 57A Am.Jur.2d *Negligence,* § 123 (1989). The privity requirement was eventually abandoned in such cases as *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916) and tort liability was extended, particularly in the products liability context, to plaintiffs suffering tangible physical injury or property damage. However, where recovery was sought for purely economic damages, like those claimed by Plaintiffs in the instant case, the "citadel of privity" was held intact.

The rationale behind the traditional rule as it applied to liability for economic losses was expressed by Justice Cardozo in *Ultramares Corp v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931). In deciding that an accounting firm that had negligently prepared financial statements for general use by a business was not liable to a lender who made a series of loans on the basis of the financial statements, the Court reasoned:

"If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt

whether a flaw may not exist in the implication of a duty that exposes to these consequences."

*Id.* 174 N.E. at 444.

The basis of the *Ultramares* holding was that the accountant's work was intended to be used by the party with whom there was privity as the needs of his business might require. In short, where the lender's reliance on the information was merely one unintended possibility among many, the Court was unwilling to recognize a legal duty running from the accountant to the lender which would support a negligence cause of action.

Where however, the relationship or nexus between the supplier and the user of certain types of information is, in one way or another sufficiently close, some Courts have been willing to extend liability for economic loss in the absence of direct contractual privity. These cases suggest that the controlling question is whether it was *foreseeable* to the negligent supplier of information that the injured party would rely on the information. Under this line of cases, if reliance was foreseeable, a legal duty was found to exist which would support liability for economic losses even in the absence of contractual privity. *See Council of Co-owners v. Whiting–Turner,* 308 Md. 18, 517 A.2d 336 (1986) (developer and builder liable to homeowner's association for faulty construction of building); *Donnelly Const. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984) (architect liable on negligence theory to contractor for increased cost of construction due to error in plans and specifications); *Howell v. Fisher,* 49 N.C.App. 488, 272 S.E.2d 19 (1980) (geological engineer liable to corporate shareholders for negligent misrepresentation in preparation of soil testing report); *A.R. Moyer, Inc. v. Graham,* Fla.Supr., 285 So.2d 397 (1973) (architect/engineer liable on negligence theory to general contractor absent privity); *Tartera v. Palumbo,* 224 Tenn. 262, 453 S.W.2d 780 (1970) (surveyor hired by purchaser of property may be liable to third person for economic losses arising out of negligent survey); *Audlane Lbr. & Bldrs. Sup. v. D.E. Britt Associates, Inc.,* D.Ct.App.Fla., 168 So.2d 333 (1964) (architect liable on negligence theory to a third-party as a result of faulty plans and specifications).

Other cases take the foreseeability requirement a step farther and require that the faulty information be intended by its negligent supplier to be specifically relied upon by a particular party or a settled class of parties before economic damages are recoverable on a negligence theory. *See E.C. Goldman, Inc. v. A/R/C/ Associates,* Fla.Dist.Ct.App., 543 So.2d 1268 (1989) (roofing inspector not liable to roofing subcontractor because no intention on part of inspector that subcontractor rely on information negligently supplied); *Baublit v. Barr & Riddle Engineering Co., Inc.,* Mo. Ct.App., 768 S.W.2d 233 (1989) (land surveyor not liable to property owner for negligent survey performed for third-party where no showing of justifiable reliance on survey); *Credit Alliance v. Arthur Anderson & Co.,* 65 N.Y.2d 536, 493 N.Y. S.2d 435, 483 N.E.2d 110 (1985) (accounting firm not liable to lender for negligently prepared financial statements not intended to be presented to or relied upon by lender); *First American Title Insurance Company, Inc. v. First Title Service Company of the Florida Keys Inc.,* Fla.Supr., 457 So.2d 467 (1984) (title abstractor liable to title insurance company for negligently prepared abstracts); *Rozny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656 (1969) (surveyor liable to purchaser of land for faulty survey); *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922) (weigher of beans liable to buyer for negligent weighing where buyers reliance was intended). *See also* Prosser, *Misrepresentation and Third Persons,* 19 Vand.L.Rev. 231 (1966).

A good illustration of the rationale behind this line of cases is found in *Glanzer.* There, the New York Court of Appeals addressed a situation in which a seller of beans contracted with a public weigher to weigh a quantity of beans to be sold to a buyer. The weigher certified the weight of the beans to the seller who paid for the service. A copy of the weight certificate was sent by the weighers to both the seller

and the buyer. The buyer ultimately paid for the quantity of beans on the faith of the weight certification made by the weighers. When the buyer attempted to resell the beans, it discovered that the actual weight of the beans was significantly less than certified by the weighers.

In holding that the defendant weighers were liable to the buyer for their economic losses notwithstanding the absence of contractual privity, Justice Cardozo stated:

"We think the law imposes a duty toward buyer as well as seller in the situation here disclosed. The plaintiffs' use of the certificate was not an indirect or collateral consequence of the action of the weighers. It was a consequence which to the weighers knowledge, was the end and aim of the transaction.... The defendants held themselves out to the public as skilled and careful in their calling. They knew that the beans had been sold, and that on the faith of their certificate payment would be made. They sent a copy to the plaintiffs for the very purpose of inducing action. All this they admit. In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed." [2]

*Id.* 135 N.E. at 275, 276.

The Court's analysis in *Glanzer* is particularly instructive given the facts of this case. Further, Justice Cardozo's analysis reflects the provisions of § 552 of the Restatement (Second) of Torts (1977) which provide, in pertinent part, as follows:

§ 552. Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. [3]

A third line of cases have strictly required privity of contract where the damages sought to be recovered are purely economic. *See East River SS Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (contractor not liable to charterer of vessel for economic losses in products liability case); *Trans World Airlines v. Curtiss–Wright Corp.,* 1 Misc.2d 477, 148 N.Y.S.2d 284 (1955) *aff'd* 2 A.D.2d 666, 153 N.Y.S.2d 546 (1956) (negligent manufacturers of airplane

---

**2.** Justice Cardozo's opinion in *Glanzer* is not at odds with his opinion in *Ultramares.* The facts in *Glanzer* supported both foreseeability and intended reliance. On the other hand, the facts in *Ultramares,* while arguably foreseeable, clearly showed no intended reliance. The different conclusions thus reached by Justice Cardozo are readily explainable.

**3.** Comment (a) to Section 552 provides, in pertinent part, as follows:

"It does not follow that every user of commercial information may hold every maker to a duty of care. Unlike the duty of honesty, the duty of care to be observed in supplying information for use in commercial transactions implies an undertaking to observe a relative standard, which may be defined only in terms of the use to which the information will be put, weighed against the magnitude and probability of loss that might attend that use if the information proves to be incorrect. A user of commercial information cannot reasonably expect its maker to have undertaken to satisfy this obligation unless the terms of the obligation were known to him. Rather, one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose."

engines not liable to purchaser of airplanes for economic losses).

The rationale behind these cases was set out in *East River,* where the Court stated:

Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product.[4]

*Id.* at 874, 106 S.Ct. at 2304.

The Delaware case law is divided on the issue of whether privity of contract is a prerequisite for the imposition of liability on a negligence theory where the damages sought to be recovered are purely economic. In *Crowell Corporation v. Topkis Construction Co.,* Del.Super., 280 A.2d 730 (1971), Judge (now Chief Justice) Christie relying on *Trans World Airlines v. Curtiss–Wright Corp., supra,* held that an owner of a building could not bring a negligence action for faulty workmanship against a subcontractor absent privity where no dramatic accident or collapse had taken place and no person suffered physical injury due to the subcontractor's alleged negligence. After recognizing that, from a social point of view, there was much to be said for Plaintiff's position that it should be permitted to recover losses sustained in order to avoid catastrophic physical injury or property damage, the Court decided to follow what it considered the then prevailing view that economic damages are not recoverable absent privity of contract.

After *Crowell* came *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.,* Del.Super., 312 A.2d 322 (1973). In *Oliver B. Cannon,* a property owner sued a painting subcontractor to recover sums paid for painting work and for damages arising out of alleged negligent workmanship when paint applied to the interior of chemical storage tanks quickly deteriorated and peeled off. In deciding that the owner could maintain a negligence cause of action against the

painting subcontractor even in the absence of direct contractual privity, the Court approved of the approach taken in *Crowell, supra* but distinguished *Crowell* on its facts, concluding that rapid deterioration of the paint constituted an accident giving rise to physical injury to property. *Id.* at 329. The Court cited with approval the opinion of *Stewart v. Cox,* 55 Cal.2d 857, 13 Cal. Rptr. 521, 362 P.2d 345 (1961). There, the Supreme Court of California stated:

Liability for negligence can exist without privity although the risk involved is only damage to property, and ... the determination whether in a specific case the defendant will be liable to a third person is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of the harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered and the policy of preventing future harm.... The liability of a contractor or subcontractor must be determined by applying this general test rather than by arbitrarily placing them in a separate category subject to a special rule.

*Id.* 13 Cal.Rptr. at 524, 362 P.2d at 348.

Three years after the *Oliver B. Cannon* opinion, our Supreme Court, in *Seiler v. Levitz Furniture Co., Etc.,* Del.Supr., 367 A.2d 999 (1976), addressed a situation in which a commercial tenant sued, among others, an architect/engineer who designed the building occupied by the tenant after two floods caused extensive damage to its property. The tenant sought recovery for property damage and the cost of correcting the defective condition of the property. Without addressing *Crowell,* the Court held that in light of the holding in *Martin v. Ryder Truck Rental, Inc.,* Del.Supr., 353 A.2d 581 (1976) privity of contract was not required for plaintiff to recover these loss-

---

**4.** Nearly all cases addressing the issue, however, do permit recovery for personal injury and property damage on a negligence theory even in the absence of privity.

es on a negligence theory under the facts of that case.[5]

Similarly in *Pack & Process, Inc. v. Celotex Corp.*, Del.Super., 503 A.2d 646 (1985) this Court, without addressing *Crowell,* held that a purchaser of a building need not show privity of contract as a prerequisite for recovery for economic losses against a roofer where the roof proved to be inherently defective. The Court stated:

> Just as the privity requirement has been abandoned in personal injury actions where the item is inherently dangerous, so should the privity requirement be abandoned in actions for economic injury where the good is inherently defective. (Citations omitted.)

*Id.* at 660.

In *Gilbane Bldg. Co. v. Nemours Foundation*, D.Del., 606 F.Supp. 995 (1985) rev'd *sub nom Pierce Associates, Inc. v. Nemours Foundation*, 3rd Cir., 865 F.2d 530 (1988), Chief Judge Stapleton, writing for the District Court, squarely addressed the continuing viability of *Crowell* in a case factually similar to the one *sub judice.* In concluding that contractual privity is not always required in a negligence action where recovery is sought for economic losses, the District Court stated:

> Since *Martin v. Ryder Truck Rental, Inc.*, Del.Supr., 353 A.2d 581 (1976) clearly indicated that Delaware had abandoned common law privity requirements in the area of products liability cases, I am convinced that the Delaware Supreme Court in *Seiler v. Levitz Furniture, Inc.*, Del.Supr., 367 A.2d 999 (1976) was likewise indicating an intent to abandon privity as a prerequisite to bringing suit on a negligence theory to recover

financial losses suffered in the construction context.

*Id.* at 1005.

On appeal, however, the Third Circuit Court of Appeals reversed the opinion of the District Court. The Court of Appeals found that "[r]ecent developments in the law suggest a trend to preclude the maintenance of a negligence action to recover purely economic loss" absent privity of contract. *Id.* at 540, 541.[6] On that basis, the Court predicted that the Delaware Supreme Court would, if the issue were raised, reaffirm the *Crowell* ruling as Delaware law.

Just over a year after the District Court's decision in *Gilbane,* this Court in *Hodges v. Smith,* Del.Super., 517 A.2d 299 (1986), was again faced with issue of whether or not economic losses are recoverable under a negligence theory absent privity of contract. In *Hodges,* plaintiff land owners brought a negligence action for economic losses against land surveyors who negligently surveyed land purchased by them years after the survey was performed. In deciding that privity was not required to maintain this negligence action, this Court held:

> Modern authority may be said to be to the effect that tort liability should be measured by the scope of the duty owed rather than by artificial concepts of privity. 74 Am.Jur.2d *Torts,* § 52 (1974). Although it appears no Delaware court has yet adopted the reasoning of Restatement (Second) of Torts, § 552 (1977), which would abolish the privity requirement in certain cases of negligent misrepresentation, the Court approves the extension of liability to foreseeable plain-

---

5. *Martin* held that privity of contract was not required for a defendant lessor of trucks to be held strictly liable in tort for personal injury and property damage sustained when a defective truck owned by defendant struck a bystander.

6. The Court of Appeals noted that both *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc., supra,* and *Seiler v. Levitz Furniture Co., supra,* involved (i) property damage, not merely econom-

ic loss and (ii) privity of contract between the injured party and the wrongdoer. Thus, the Court inferred that these two Delaware Supreme Court decisions could not be construed as abandoning the holding in *Crowell.* It is noteworthy, however, that neither the Court of Appeals in *Pierce Associates, Inc.* nor this Court in *Crowell* cited § 552 of Restatement (Second) of Torts (1977).

tiffs under these allegations of a survey error.

*Id.* at 301.

∎ In my view, the reasoning set out in *Glanzer, supra,* and Judge Ridgely's opinion in *Hodges* are particularly compelling in this case and should be applied. While it is not this Court's intention to state a general rule which applies to all professions in all situations, the Court concludes that privity of contract is not an indispensable prerequisite to the recovery of economic damages in negligence cases such as this which fall within the parameters of § 552 of Restatement (Second) of Torts.

∎ Modern legal authority supports the proposition that if, in the course of its business, TTR negligently obtained and communicated incorrect information specifically known and intended to be for the guidance of Plaintiffs, and if it is specifically known and intended that Plaintiffs would rely in calculating their project bids on that information, and if Plaintiffs rely thereon to their detriment, then TTR should be liable for foreseeable economic losses sustained by Plaintiffs regardless of whether privity of contract exists.

∎ At the time it prepared the project plans and specifications and conveyed the information at the pre-bid meeting, TTR knew and intended that this information would be specifically supplied to and relied upon by project bidders for the specific purpose of calculating their project bids. On this basis, TTR owed a legal duty to Plaintiffs, as known and intended members of this limited class, to supply correct information.

∎ A reading of the facts in a light most favorable to Plaintiffs reveals a claim that TTR negligently calculated the applicable tidal heights and project benchmark to the detriment of Plaintiffs. As the Court in *Glanzer, supra,* stated, the use of the information negligently supplied was

not an indirect or collateral consequence ... it was the end and aim of the transaction. Therefore, the Court concludes, as a matter of law, that the lack of contractual privity between TTR and Plaintiffs is not fatal to their negligence claims notwithstanding the fact that Plaintiffs seek purely economic damages in this case. Stated otherwise, the Court holds that a claim of negligence lies with regard to those cases falling within the purview of § 552 of the Restatement (Second) of Torts (1977), the provisions of which this Court now specifically adopts with regard to Delaware civil practice.[7]

### PLAINTIFFS' THIRD–PARTY BENEFICIARY CLAIM

∎ Ordinarily, a stranger to a contract acquires no rights thereunder unless it is the intention of the parties to confer a benefit upon such a third-party. *Delmar News, Inc. v. Jacobs Oil Company,* Del.Super., 584 A.2d 531 (Barron, J.) 1990; 2 *Williston on Contracts,* § 356 (1954). It is universally recognized, however, that where it is the intention of the promisee to secure performance of the promised act for the benefit of another, either as a gift or in satisfaction of an obligation to that person, and the promisee makes a valid contract to do so, then such third person has an enforceable right under that contract to require the promisor to perform or respond in damages. *Blair v. Anderson,* Del.Supr., 325 A.2d 94 (1974); *Astle v. Wenke,* Del. Supr., 297 A.2d 45 (1972).

∎ In order for third-party beneficiary rights to be created, not only is it necessary that performance of the contract confer a benefit upon a third person that was intended, but the conferring of the beneficial effect on such third-party, whether it be creditor or donee, should be a material part of the contract's purpose. *Insituform*

---

7. The decision reached herein is not at variance with the holding in *Crowell Corporation v. Topkis Construction Co., supra. Crowell* was decided under traditional product liability concepts. Here we do not have a defective product caused by faulty manufacture or construction. Rather, the case *sub judice* is predicated on the limited parameters of § 552 of Restatement (Second) of Torts (1977), that is, false information generated for a profit supplied for business guidance with an intended reliance upon such information by the recipient thereof.

*of North America v. Chandler,* Del.Ch., 534 A.2d 257 (1987).

 The only third parties who have legal rights are donees and creditors of the promisee. See Restatement of Contracts (Second), § 311(3) (1979). It is abundantly clear to the Court that Plaintiffs were not creditors of DNREC at the time the TTR/DNREC contract was made nor were they the subject of DNREC's generosity.

 Moreover, while it is true that the agreement between TTR and DNREC, requiring TTR to provide plans and specifications for the project, was made in anticipation that bids would be made thereon, this does not confer upon either Plaintiff the status of third-party beneficiary. The plans prepared by TTR pursuant to the contract were intended to be used by Plaintiffs and others who planned to submit bids on the project. This, however, is not, in my view, tantamount to saying that the contract giving rise to those plans and specifications was intended in any legal sense to benefit Plaintiffs.

Although the effect of the agreement was intended, and in fact did, provide information for the use of Plaintiffs, the contract itself was merely a means through which the benefit that motivated the contract, namely, the acquisition of plans and specifications for the project, was sought to be achieved by the parties thereto. Where this is the case, the third parties even though not merely incidental to the contract in the sense of being collateral or peripheral to the achievement of the contract's purpose, take no rights thereunder.

*Insituform of North America,* 534 A.2d at 270.

## CONCLUSION

For the foregoing reasons, the Court concludes that as to the Plaintiffs' claims that the negligently prepared project plans and specifications and the information conveyed at the pre-bid meeting were prepared and presented by TTR for the use of a specific and limited class of potential users of which Plaintiffs were known members, and because Plaintiffs were intended to and did rely to their detriment on that information in preparing their project bids, Plaintiffs' negligence and negligent misrepresentation claims are cognizable despite the lack of contractual privity with TTR and the fact that Plaintiffs seek purely economic damages.

As to Plaintiffs' second cause of action the Court concludes that Plaintiffs were not third-party beneficiaries of the contract between TTR and DNREC and are, therefore, not entitled to maintain a breach of contract action against TTR based thereon.

TTR's summary judgment is, therefore, denied with respect to Counts I and III of the complaint and granted with respect to Count II.

It Is So ORDERED.