## IN THE COURT OF COMMON PLEAS
## FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

NEXSIS, INC. t/a BENJAMIN, )
FRANKLIN PLUMBING, )
 )
  Plaintiff, )
 )
  v. ) C.A. No. CPU4-17-001056
 )
ANDREA ROBINSON, and )
LIBERTY MUTUAL )
INSURANCE COMPANY, )
 )
  Defendants. )

Douglas A. Shachtman, Esq. of The Shachtman Law Firm,
*Attorney for Plaintiff*

David L. Baumberger, Esq. of Chrissinger & Baumberger,
*Attorney for Defendant-Liberty Mutual Ins. Co.*

## ORDER DENYING PLAINTIFF'S MOTION FOR RE-ARGUMENT

**WELCH, J.**

On June 30, 2017, this Court held a hearing on Defendant Liberty Mutual Insurance Company's Motion to Dismiss for Failure to State a Claim. After legal argument from both parties, the Court heard rebuttal by defense counsel who argued, "Again, I don't think the approval to an estimate rises to the level of an intended beneficiary under the insurance policy, as Nexsis claims it would." The Court then responded, "You know what, I agree. I am signing your order."[1] The Court then granted Defendant's motion.

---

[1] While the Court values supportive case law, the record satisfies the Delaware Supreme Court's admonishment that a trial court state its reasons on the record "no matter how briefly." *Ademski v. Ruth*, 229 A.2d 837, 838 n.1 (Del. 1967). Accordingly, Plaintiff was correct to "assume that the Court adopted the argument of Defendant Liberty

Following the Court's judgment, Plaintiff filed a timely *Motion for Re-argument* on July 10, 2017. On July 21, 2017, the Court wrote defense counsel a letter posing a preliminary question and requesting supplemental briefing. On August 7, 2017, defense counsel for Liberty Mutual apologized for his late reply to the Court's letter and noted that he would file a response by August 16, 2017. On August 16, 2017, Liberty Mutual filed its *Response to Plaintiff's Motion for Re-argument*. Plaintiff then filed its *Reply in Support of Its Motion for Re-argument* on August 23, 2017.

In the case *sub judice*, Defendant Andrea Robinson ("Robinson") sought to have repairs performed to fix a leak in her roof. Robinson contacted her home insurance carrier, Defendant Liberty Mutual Insurance Company ("Liberty Mutual") and requested that her home repairs be covered. Liberty Mutual requested that Robinson send it the repair estimates in order to confirm that damage to the property surrounding the water leak was related to the water leak, as the water leak itself was not insured. Robinson sent Liberty Mutual an estimate from Plaintiff Benjamin Franklin Plumbing ("Plaintiff") and Liberty Mutual deemed the estimate to be reasonable and necessary. Liberty Mutual authorized the repairs and paid Robinson directly. Plaintiff then sued Robinson, alleging that she failed to pay it for the repairs, and Liberty Mutual, claiming that a contract was created when Liberty Mutual authorized the repairs and issued payment for those repairs.[2]

---

Mutual, i.e. that an injured party may not directly sue the tortfeasor's insurer." Plaintiff's Motion for Reargument ("Plaintiff's Motion") at 1.

[2] During the hearing, Plaintiff noted that default judgment had been entered against Defendant Andrea Robinson ("Robinson") and that it was investigating options of enforcement. Plaintiff is essentially seeking a "second bite of the apple" and desires this Court to order Liberty Mutual to pay twice because Robinson cashed Liberty Mutual's check and failed to pay Plaintiff.

## Standard of Review

Pursuant to *Court of Common Pleas Civil Rule 59(e)*, a Motion for Re-argument is a request for the Court to reconsider its findings of fact, conclusions of law, or judgment.[3] "New arguments, or arguments that could have been raised prior to the Court's decision, cannot be raised in a motion for re-argument."[4] Moreover, a Motion for Re-argument is not an opportunity for litigants to reargue positions the court has previously resolved.[5] Motions for Re-argument "will be denied unless the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[6] "A party seeking to have the trial court reconsider the earlier ruling must demonstrate newly discovered evidence, a change in the law, or manifest injustice."[7]

## Parties' Contentions

In Plaintiff's Motion for Re-argument, Plaintiff reiterates that it either "contracted directly" with Liberty Mutual by Liberty Mutual "obtaining and approving the repair quote" or, alternatively, Plaintiff was an intended beneficiary of Liberty Mutual's promise to pay Robinson for the repair costs.[8] In Defendant's Response, Liberty Mutual argues that Plaintiff cannot be an intended beneficiary of the contract between Defendants because there was no specific intent to create such a right when the contract was created.[9] In fact, in its Motion to Dismiss, Liberty Mutual pointed to the plain language of the contract between Defendants as evidencing a lack of intent,

---

[3] *Beatty v. Smedley*, 2003 WL 23353491, at *2 (Del. Super. Mar. 12, 2003).
[4] *Citimortgage, Inc. v. Bishop*, 2011 WL 1205149, at *1 (Del. Super. Mar. 29, 2011).
[5] *See id.*
[6] *Beatty*, 2003 WL 23353491, at *2.
[7] *Parisan v. Cohan*, 2012 WL 1066506, at *1 (Del. Com. Pl. Mar. 29, 2012).
[8] Plaintiff's Motion at 3.
[9] Defendant Liberty Mutual Insurance Company's Response to Plaintiff's Motion for Reargument ("Defendant's Response") at 3-4.

3

"No one will have the right to join us as a party to any action against an 'insured.'"[10] Thus, it claims Plaintiff is simply an incidental beneficiary, and not an intended one.[11] Secondarily, Liberty Mutual asserts that there are no facts to support Plaintiff's assertion that a direct contract exists between Plaintiff and itself.[12] Finally, in Plaintiff's Reply, Plaintiff claims that Liberty Mutual "is wrong as to contract law."[13] Plaintiff reasserts that the pled facts—Liberty Mutual insured Robinson's residence, Liberty Mutual had an obligation to pay for the repairs, and it reviewed and approved Plaintiff's estimate—are indicative of an intended beneficiary.[14]

## Discussion

Plaintiff's Motion for Re-argument does not allege the existence of newly discovered evidence or that the Court overlooked controlling precedent. Instead, Plaintiff's arguments imply that the Court misapprehended the law and/or facts. The Court disagrees and will not order Liberty Mutual to pay twice.

Plaintiff's secondary argument—that a contract existed between Plaintiff and Liberty Mutual based on the latter's promise to Robinson—is meritless.[15] Under Delaware law, a contract is defined "as an agreement upon sufficient consideration to do or not to do a particular thing."[16] "Consideration is a bargained-for-exchange of legal value."[17] In order to create a contract, there

---

[10] Defendant Liberty Mutual Insurance Company's Motion to Dismiss Under Common Pleas Civil Rule 12 for Failure to State a Claim and Lack of Standing ("Defendant's Motion to Dismiss") at 4.

[11] *See id.*

[12] *See id.* at 4.

[13] Plaintiff's Reply in Support of Its Motion for Reargument ("Plaintiff's Reply") at 2. The Court will not address Plaintiff's arguments in its reply brief that Defendant's original Motion to Dismiss and Response transformed into summary judgment actions when Defendant attached the homeowner's policy, as the case law is clear. *See Frabizzio v. Hendry*, 2015 WL 7254317, at *2 (Del. Com. Pl. Nov. 16, 2015) (noting an exception where a motion to dismiss will not convert to a summary judgment motion when the "extrinsic document is integral to a plaintiff's claim and is incorporated into the complaint by reference").

[14] Plaintiff's Reply at 3-4.

[15] Plaintiff cites no case law for its claim.

[16] *Howlett v. Zawora*, 2012 WL 1205103, at *2 (Del. Com. Pl. Mar. 30, 2012) (citing *Rash v. Equitable Trust Co.*, 159 A. 839, 840 (Del. Super. 1931)).

[17] *Harmon v. State*, 2010 WL 8250826, at *2 (Del. Super. Sept. 27, 2010) (citing *Barnard v. State*, 642 A.2d 808, 818 (Del. Super. 1992), *aff'd*, 637 A.2d 829 (Del. 1994)).

must be "mutual assent to the terms of the agreement, also known as the meeting of the minds."[18]

"Mutual assent requires an offer and an acceptance wherein 'all the essential terms of the proposal must have been reasonably certain and definite.'"[19] If the meeting of the minds does not occur, then the contract is unenforceable according to Delaware law.[20] Because there is no evidence of a verbal or written agreement between Plaintiff and Liberty Mutual, proceeding to analyze whether a breach occurred would be premature.

Plaintiff's primary argument is also misplaced. This Court recently addressed the issue of third-party beneficiaries:

> Generally, a stranger to a contract cannot enforce rights under the contract. However, a non-party may enforce the contract as a third party beneficiary if the following is established: (1) the contracting parties intended to benefit the third party; (2) the benefit is intended to be a gift or in satisfaction of a pre-existing obligation; and (3) the intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract. If there is no intent by the contracting parties to confer a benefit, a third party who receives such a benefit under the contract is merely an incidental beneficiary with no enforceable rights.[21]

The Court further states that one "must look to the language of the contract" to decipher the intent of the parties when they entered into the contract.[22]

There are no facts here which support that Robinson and Liberty Mutual intended to benefit Plaintiff when they entered into the subject contract. Indeed, regarding insurance policies and

---

[18] *Thomas v. Thomas*, 2010 WL 1452872, at *4 (Del. Com. Pl. Mar. 19, 2010) (citing *Quinones v. Access Labor*, 2008 WL 2410170, at *5 (Del. Super. 2008)).

[19] *See id.* (quoting *Gleason v. Ney*, 1981 WL 88231, at *1 (Del. Ch. 1981)).

[20] *See Rodgers v. Erickson Air–Crane Co. L.L.C.*, 2000 WL 1211157, at *6 (Del. Super. Aug. 17, 2000).

[21] *Conaway v. New Hope Tile, LLC*, No. CPU4-16-002487, at 8-9 (Del. Com. Pl. May 31, 2017) (internal footnotes omitted). "[N]ot only is it necessary that performance of the contract confer a benefit upon a third person that was intended, but the conferring of the beneficial effect on such third-party should be a material part of the contract's purpose." *Washington House Condo. Ass'n v. Daystar Sills, Inc.*, 2015 WL 6750046, at *4 (Del. Super. Oct. 28, 2015) (internal quotation marks omitted) (quoting *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. 1990)).

[22] *See Conaway*, No. CPU4-16-002487, at 9 (citing *Bromwich v. Hanby*, 2010 WL 8250796, at *2 (Del. Super. July 1, 2010)); accord *Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 535-36 (3d Cir. 1989) (finding a general contractor not to be an intended third-party beneficiary of a sub-contract); *Cmty. Ass'n Underwriters v. Rhodes Dev. Grp., Inc.*, 488 Fed. Appx. 547, 552 (3d Cir. 2012) (Rendell, J., concurring) (quoting *Scarpitti v. Weborg*, 609 A.2d 147, 151 (Pa. 1992)) (agreeing that the intent must be present "'at the time of contracting'").

5

third-party beneficiaries, the Superior Court has held that the language of a policy preventing direct actions by third parties indicates "clear" intent not to allow direct actions by third parties.[23] The language thus solidifies that the third party is not an intended beneficiary, but an incidental one.[24] Here, the contractual language for liability coverage, which nearly mirrors the language in *Broadway v. Allstate Property & Casualty Insurance Company*,[25] states:

> **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.
>
> No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Cover E [Personal Liability] can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.[26]

The contract language in this case is unambiguous; Plaintiff is unable to bring suit against Liberty Mutual as an incidental beneficiary to the contract.

Despite the dispositive contractual language,[27] Plaintiff relies on the Chancery Court's analogy in *Madison Realty Partners 7, LLC v. AG ISA, LLC* to a RESTATEMENT (SECOND) OF CONTRACTS illustration.[28] Under § 302(1)(a), the Restatement suggests the following:

> B promises A to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D and E. If the promise is interpreted as a promise that B will pay C, D and E, they are intended beneficiaries under Subsection (1)(a); if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries.[29]

---

[23] *Broadway v. Allstate Property & Cas. Ins. Co.*, 2015 WL 4749176, at *5 (Del. Super. Aug. 11, 2015) (internal citations omitted).

[24] *See id.*

[25] *See id.* at 6.

[26] Defendant's Motion to Dismiss, Exhibit at 11, 15.

[27] *See Empire Fire & Marine Ins. Co. v. Miller*, 2012 WL 1151031, at *5 (Del. Com. Pl. Apr. 5, 2012) ("In this case, an extended analysis of whether Empire qualifies as an intended beneficiary under the Ms. Williams–Nationwide contract is unnecessary because this contract specifically prohibits direct suits by injured parties against Nationwide.").

[28] *Madison Realty Partners 7, LLC v. AG ISA, LLC*, 2011 WL 406268 (Del. Ch. Apr. 17, 2001).

[29] RESTATEMENT (SECOND) OF CONTRACTS § 302 cmt. b, illus. 3 (1981).

Plaintiff believes this illustration supports its position.[30] Yet, theoretical musings are rarely helpful. Relevant to the case at bar, *Madison* involved claimed third-party beneficiaries to the Partnership Agreement ("Agreement") and beneficiaries to a subsequent contract between an affiliate and controlling entity of the general partners.[31] Madison Realty Partners 7 LLC ("Madison"), managing general partner of the general partnership, sued AG ISA LLC ("AGGP"), second general partner responsible for providing all funding, claiming AGGP breached the Agreement when it failed to notify Madison that it would no longer provide funding.[32]

Prior to this dispute, Madison contracted with Investment Services of America LLC ("ISA") and The Madison Avenue Capital Group II LLC ("MACG II"), affiliates and co-plaintiffs, to provide personnel and services to the partnership.[33] Likewise, Madison Avenue Investment Partners LLC ("MAIP"), a Madison affiliate, contracted with Angelo Gordon, who held a controlling interest in AGGP, to require AGGP to satisfy its "obligations" to the partnership under the Agreement ("Umbrella Contract").[34] In the defendants' motion to dismiss, they argued that the non-signatory plaintiffs to the Agreement, ISA and MACG II, and to the Umbrella Contract, Madison, ISA and MACG II, were only incidental beneficiaries to the agreements.[35]

Regarding the Agreement, the Court found that even though all parties were aware that the partnership would rely on its Agreement when it came time to pay ISA and MACG II for their

---

[30] Plaintiff believes Liberty Mutual's attempt to distinguish *Madison* on its facts is misplaced because the "importance of *Madison* is the court's recognition of the persuasiveness of the illustration to Restatement § 302, not the facts of that case." Plaintiff's Reply at 2. This Court disagrees. The "court's recognition" of the Restatement's "persuasiveness" is based on the factual underpinnings of the case itself. The Chancery Court not only discussed the illustration before delving into the facts, but the court stated as much, "[the illustration's] analytical framework aids the Court's assessment of the third-party beneficiary status of the non-signatory plaintiffs under the Partnership and the Umbrella Agreements, respectively." *Madison Realty Partners 7, LLC*, 2011 WL 406268 at *5.
[31] *See Madison Realty Partners 7, LLC*, 2011 WL 406268 at *1.
[32] *See id.*
[33] *See id.*
[34] *See id.*
[35] *See id.* at *5-6.

7

services, this simply made ISA and MACG II "expected creditors," not intended beneficiaries.[36] Similarly, under the Umbrella Contract, even though Madison would receive proceeds as a general partner when Angelo Gordon caused AGGP to honor its pledge under the Agreement, and ISA and MACG II would receive payments under their service agreements when the partnership received funding from AGGP, the non-signatory parties were still incidental beneficiaries.[37]

Presumably, the *Madison* Court inferred that AGGP, as B, promised to provide funding to the partnership as well as Madison indirectly, collectively A, under the Agreement assuming that ISA and MACG II would be paid by A under the service agreements. Also, under the Umbrella Contract, Angelo Gordon, as B, would cause AGGP, as A, to continue providing funding to the partnership, which in turn would provide proceeds to Madison indirectly, as a general partner, and ISA and MACG II as "expected creditors."[38]

While the present case does not delve into corporate matters, the Restatement's illustration applies in a similar manner. Robinson, as A, contacted with B, her home insurance carrier for Liberty Mutual to pay her for home repair coverage. Robinson, as A, then contracted with Plaintiff, as C, to provide personnel and services to repair her home. Although not within the quoted language in *Madison*, the fulcrum of the illustration is "[i]f the promise is interpreted as a promise that B will pay C, D and E, they are intended beneficiaries under Subsection (1)(a)."[39]

In the present case, even though Liberty Mutual authorized the repairs, it did not promise to pay Plaintiffs directly. Moreover, if one were to closely examine *Madison*, despite Madison receiving proceeds indirectly from the other agreements, as the partnership would receive proceeds from the affiliate service agreements and Umbrella Contract, Madison was still deemed an

---

[36] *See id.* at *5.
[37] *See id.* at *6.
[38] *See id.* at *5-6.
[39] RESTATEMENT (SECOND) OF CONTRACTS § 302 cmt. b, illus. 3 (1981).

incidental beneficiary.[40] Therefore, any indirect relationship Plaintiff attempts to establish is unavailing unless Plaintiff can show that Liberty Mutual intended to pay Plaintiff directly.

The Court turns to *E.I. du Pont de Nemours & Company v. MacDermid Printing Solutions*, which also relied on the above illustration, to support this interpretation of *Madison*. In *E.I. du Pont de Nemours & Co.*, MacDermid Printing Solutions LLC ("MacDermid") claimed to be a third-party beneficiary to a settlement agreement ("Agreement") between Cortron Corporation ("Cortron") and E.I. du Pont de Nemours & Company ("DuPont"), which was intended to resolve a April 2008 lawsuit pending in the United States District Court for the District of Minnesota.[41] The Agreement required Cortron to meet certain criteria of disengagement with the thermal flexographic printing industry while requiring DuPont to indemnify Cortron from all costs resulting from potential claims MacDermid would be "expected" to file relating to the settlement terms.[42]

Additionally, a lawsuit between MacDermid and DuPont was pending in the United States District Court for the District of New Jersey and a lawsuit between MacDermid and Cortron was pending in the District Court of Connecticut.[43] On July 8, 2014, the Connecticut jury returned a verdict in MacDermid's favor, resulting in a nearly sixty-five million dollar judgment against Cortron.[44] DuPont then filed a complaint in the Superior Court of Delaware seeking a declaratory judgment which prevented MacDermid from suing DuPont relating to the judgment or the Agreement.[45] The next day, on March 4, 2015, MacDermid filed a new action in the Connecticut District Court ("2015 Connecticut action"), which was removed to the District Court of Delaware,

---

[40] *See Madison Realty Partners 7, LLC*, 2011 WL 406268 at *5-6.
[41] *See E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions*, 2017 WL 1217207, at *1 (D. Del. Mar. 31, 2017).
[42] *See id.*
[43] *See id.* at *2.
[44] *See id.*
[45] *See id.*

9

asserting that it was a third-party beneficiary to the Agreement and DuPont breached that Agreement by not paying the judgment.[46]

The Delaware District Court held that even though the Agreement was based on "future claims MacDermid may assert once it learned of the [Agreement]," MacDermid remained simply an "expected" creditor.[47] This was because MacDermid was not a "creditor beneficiary" "'at the time of the contract.'"[48] MacDermid was therefore only an incidental beneficiary as no pre-existing duty existed.[49] The Delaware District Court quoted the Restatement's illustration, noting it "bolstered" its analysis because DuPont did not promise to pay MacDermid, but Cortron in order for Cortron to satisfy any of MacDermid's judgments against it.[50]

Plaintiff is similarly an expected creditor as Liberty Mutual has no pre-existing duty to Plaintiff. This is especially true when Plaintiff's claims were also expectancies similar to MacDermid's claims. Thus, this Court fails to see how Plaintiff's position stands on surer footing than the plaintiffs in *Madison* and *E.I. du Pont de Nemours & Company*.

---

[46] *See id.* The original Connecticut action was appealed to the Second Circuit, which affirmed in part and remanded in part, the New Jersey action is pending, and the 2015 Connecticut action was dismissed as a result of the Delaware action. *See id.*

[47] *See id.* at *4.

[48] *See id.* (quoting *Pettit v. Country Life Homes, Inc.*, 2009 WL 846922, at *3 (Del Super. Mar. 31, 2009)) (noting that MacDermid was required to be a "donee beneficiary," which it was not claiming to be, or a creditor beneficiary under the second prong of the intended beneficiary test).

[49] *See id.*

[50] *See id.*

10

## Conclusion

After consideration of the supplemental briefing and applicable law, the Court hereby **denies** the Motion. The Court has not misapprehended the law or facts such that the outcome of its decision would have been different. Plaintiff's Motion for Re-argument is hereby **DENIED.** Each party shall bear their own costs.

**IT IS SO ORDERED** this 25 th day of September, 2017.

_____
John K. Welch, Judge

cc:    Ms. Tamu White, Chief Civil Clerk

11