## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JANE DOE (a fictitious name),

    Plaintiff,

v.

MASSAGE ENVY FRANCHISING, LLC

and

DDW ENTERPRISES, LLC

and

SAVAD, LLC D/B/A
MASSAGE ENVY CHRISTIANA

and

ALICIA NORRIS

and

HAND AND STONE FRANCHISE CORPORATION

and

GWS VENTURES, INC.

and

JD WELLNESS, LLC

and

GERALD L'HEUREUX,

    Defendants.

C.A. No. S20C-05-025 RFS

## **ORDER**

Submitted: 1/13/2021
Decided: 1/22/2021

Philip T. Edwards, Esq., 1011 Centre Rd., Suite 210 Wilmington, DE 19805 and V. Paul Bucci, II, Esq. and M. Stewart Ryan, Esq., 1435 Walnut Street, Suite 700 Philadelphia, PA 19102, Attorneys for Plaintiff.

Kevin J. Connors, Esq., Nemours Building, 1007 N. Orange Street, P.O. Box 8888, Wilmington, DE 19899, Attorney for Defendant, GWS Ventures, Inc.

## I. **INTRODUCTION**

Before the Court is GWS Ventures, Inc.'s ("GWS") Partial Motion for Summary Judgment[1] as to Jane Doe's ("Plaintiff") Second Cause of Action: Vicarious Liability. For the reasons that follow, GWS's motion is **DENIED**.

## II. **FACTUAL AND PROCEDURAL HISTORY**

On or about June 30, 2018, Plaintiff checked into Massage Envy – Christiana location for a massage. Plaintiff alleges she was sexually assaulted by Christopher Dorman ("Dorman"), an employee at Massage Envy, giving rise to Plaintiff bringing numerous claims against multiple defendants before the Court.

Prior to working at Massage Envy, Dorman was an employee of a Hand and Stone franchisee location owned and operated by JD Wellness, LLC.[2] Plaintiff alleges Dorman had several complaints for inappropriate sexual touching when he was an employee of the Franchisee; however, Dorman continued to maintain his massage therapy license. GWS is a regional developer of Hand and Stone.

On May 21, 2020, Plaintiff filed her complaint in this Court seeking damages arising out of the alleged sexual assault. Plaintiff brought multiple claims against Hand and Stone: (1) Vicarious Liability; (2) Negligence; (3) Failure to Rescue; (4) Breach of Duty to Warn; (5) Fraudulent Concealment; (6) Negligence Per Se; and (7) Negligent Infliction of Emotional

---

[1] GWS filed a motion to dismiss; however, given GWS's filing of a short affidavit regarding Dorman's employment status, the Court converted the motion to a motion for partial summary judgment. (If the Court is to consider matters outside of the pleadings, under Rule 12(b), the Court is to formally convert the motion to dismiss into a motion for summary judgment. *Furman v. Delaware Dep't of Transp.*, 30 A.3d 771, 774 (Del. 2011)).

[2] JD Wellness, LLC was previously named in the suit as JDY Ventures, LLC d/b/a Hand and Spa.

Distress. Plaintiff contends GWS should be liable for Dorman's actions, arguing GWS, along with Hand and Stone, controls the day-to-day operations of the franchisees.

### III. DISCUSSION

Under Superior Court Civil Rule 56(c), a party is entitled to summary judgment if the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[3] The party moving for summary judgment bears the initial burden of showing no material issues of fact are present.[4] When a moving party meets her initial burden of showing that no material issues of fact exist, the burden shifts to the nonmoving party to show that such issues do exist.[5] The facts must be viewed in a light favorable to the non-moving party.[6]

In support of its motion, GWS has provided the Court with the affidavit of President and Chief Executive Officer of GWS, Gregory Shishko ("Shishko").[7] Shishko declares GWS has never employed Dorman, nor has GWS ever supervised Dorman's activities.[8]

GWS contends no principal – agent relationship can exists between Dorman and GWS. GWS argues Plaintiff has not provided any evidence that GWS knew or should have known of Dorman's alleged misconduct. Moreover, GWS argues Plaintiff has failed to allege GWS had an obligation to report the misconduct.[9]

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent."[10] "If the principal

---

[3] Super. Ct. Civ. R. 56(c).
[4] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).
[5] Super. Ct. Civ. R. 56(c).
[6] *Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1381 (Del. Super. Ct. 1990).
[7] Pl.'s Reply Ex. D.
[8] *Id.*
[9] GWS argues Plaintiff has provided no evidence of misconduct. At this point, it is a narrow focus on the status between Dorman and GWS. After discovery, if GWS wishes to file additional motions, GWS is free to do so.
[10] *Fisher v. Townsends, Inc.*, 695 A.2d 53, 57 (Del. 1997).

3

assumes the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract, a master/servant type of agency relationship has been created."[11]

Plaintiff argues GWS is liable because GWS, as regional developer, controlled the day-to-day operations of Hand and Stone's franchise locations. In support of this contention, Plaintiff has provided the Court with the Regional Development Agreement (the "Agreement") between Hand and Stone Franchise Corp. and GWS.[12] Multiple sections of the Agreement raise questions as to the amount of authority given to GWS over the franchise locations.

The Agreement states:

1.2 Regional Developer hereby undertakes the obligation to diligently screen and evaluate individuals to become franchisees of Franchisor at locations within the Development Area, and to undertake Franchisor's field responsibilities for development and service prescribed herein to franchisees which operate "HAND AND STONE MASSAGE SPA" Franchised Businesses, as defined in Section 1.8 hereof, franchised by Franchisor in the Development Area and shall not be permitted to solicit or screen individuals outside of the Development Area. Regional Developer may only undertake Franchisor's field responsibilities for sales, training, and service.[13]

Article V of the Agreement lays out the duties of the regional developer. Section 5.2 of the Agreement provides:

Regional Developer and, at Franchisor's discretion, one (1) manager designated by Regional Developer and approved by Franchisor, shall attend and complete, to Franchisor's satisfaction, Franchisor's initial training session, and Regional Developer, his manager or other employees, as Franchisor may designate, shall attend and complete, to Franchisor's satisfaction, such other training sessions as Franchisor may reasonably require from time to time. For any training session Franchisor shall only pay for the instructors, training facilities, and training materials, and Regional Developer shall pay for all other expenses incurred by

---

[11] Id. at 59.
[12] Pl.'s Reply Ex. A.
[13] Id.

4

Regional Developer, his manager or other employees, including, without limitation, the costs of travel, room, board, and wages.[14]

Section 5.5 further provides that the regional developer shall:

(a) Be responsible for all activities involved in the development and servicing of "HAND AND STONE MASSAGE SPA" Franchised Businesses including, but not limited to: (i) advertising for prospects for "HAND AND STONE MASSAGE SPA" franchises; (ii) providing all prospects with information about the Franchisor on a timely basis in conformity with the policies of the Franchisor as established and modified from time to time in accordance with Federal, State and Local laws and regulations; (iii) selecting sites; (iv) negotiating leases; (v) providing construction advice; (vi) assisting with Franchised Business openings; (vii) inspecting Franchised Businesses; and (viii) providing business advice and ongoing training to franchisees.

(b) Assist the Franchisor in the enforcement of all provisions of any Franchise Agreement for any unit established in his Development Area. If the Franchisor incurs expenses to enforce or defend the Agreements or to commence eviction of franchisees within the Development Area, the Franchisor may charge the Regional Developer [redaction] of its expenditures.

....

(k) Provide, at his expense, a qualified and trained field representative to give advice to "HAND AND STONE MASSAGE SPA" franchisees upon the opening of their Franchised Business in the Development Area and spend 5 days of on-site assistance after opening at the Franchised Business, and thereafter give additional training to franchisees and their employees in accordance with the standards set forth by the Franchisor. The Regional Developer must be a "graduate" of the training program.

(l) Inspect all HAND AND STONE MASSAGE SPA Franchised Businesses in the Development Area at least once per month and report to the Franchisor on evaluation forms supplied by Franchisor.[15]

The Agreement gives GWS much authority in its role as regional developer. GWS provides the initial training and continues to enforce the Hand and Stone standards, ensuring the franchise locations maintain compliance. If GWS had actual control over the franchise location's

---

[14] *Id.*
[15] *Id.*

employee, such that an agency relationship could arise, is a factual issue that needs further development.

Plaintiff also provided a deposition from Hand and Stone CEO, Todd Leff, which was taken in relation to a case in Pennsylvania titled *Jane Doe v. Hand and Stone Franchise Corporation, et al.*[16] The deposition provided further information that GWS had the ability to enter the franchise location to ensure compliance with the standards set by Hand and Stone:

> Q: Okay. And when it's referring to franchisor and its designees have the right to enter and inspect the franchised business to ensure that the franchisee is conducting the business in accordance with the quality control provisions and performance standards of Hand and Stone Franchise Corporation, who would those designees be?
>
> A: In this case, the regional developer.
>
> Q: Okay. So when we're talking about designee as it relates to the sentence that I just read, that would be the regional developer who would have the right to enter and inspect the franchise business at the approved location at all reasonable times to ensure that the franchisee is operating the business in accordance with the quality control provisions and performance standards established by Hand and Stone Franchise Corp. Correct?
>
> A: Correct.

In addition to training and inspecting the franchise location, GWS was also given broad authority in handling any violations. Plaintiff also provided the Court with a deposition of Shishko taken in a Pennsylvania matter.[17] When asked how violations of the Franchise Agreement are handled, Shishko provided:

> A: The first -- the first step in that is we issue something that's called a blue sheet, which is basically a warning to the franchisee that they are in violation of certain requirements. That gets, you know, delivered to the franchisee and it also gets delivered to Corporate through our portal where we put all of our reporting that

---

[16] Pl.'s Reply Ex. C. The deposition is dated November 6, 2020. Even assuming this deposition is particular to the Pennsylvania case, the Court finds parts of the deposition raises questions as to the control granted by Hand and Stone to the regional developers.

[17] The deposition was taken on July 10, 2020 in the matter of a Pennsylvania case - *Jane Doe v. Hand and Stone Franchise Corporation, et al. Id.* Ex. B.

6

we submit. All of our quarterly reports get submitted to Corporate. This would go along with that, acknowledging that there has been a blue sheet and a violation of, you know, the requirements of the franchise.

Q: Okay. And what's then the second step?

A: If it goes beyond the second step, I mean, then it goes -- maybe Corporate will consider termination. Generally speaking, you know, there's not a repeat of the same offense. So it's really -- after I do my initial warning, from that point on it becomes a Corporate decision as to whether or not to terminate. [18]

Based on the Agreement and the depositions, Plaintiff has raised enough doubt as to GWS's control over the individual franchise locations and Dorman. GWS, as regional developer, had the right to enter and inspect the franchise location at will. In effect, GWS not only provided initial training, but also had the ability to continue to have a role in the daily operations of the franchise location.

The Court is aware that the Agreement expressly states:

14.1 (a) It is understood and agreed by the parties hereto that this Agreement does not create a fiduciary relationship between them, that the Regional Developer shall be an independent contractor, and that nothing in this Agreement is intended to make either party an agent, legal representative, subsidiary, joint venturer, partner, employee or servant of the other for any purpose whatsoever.[19]

However, "[i]t is the actions taken by the parties, not the terms used in the contract, that are dispositive in determining whether they were principal and agent respectively."[20] To determine the actual relationship between GWS and Dorman, further discovery would be required. The focus at this point is whether a relationship existed between GWS and Dorman that would create liability for GWS. Whether GWS had control over Dorman is a factual question that needs to be developed. The Court finds, at this stage of the case, there is enough in the record to deny GWS's motion.

---

[18] *Id.*
[19] *Id.* Ex. A.
[20] *Fisher v. Townsends, Inc.,* 695 A.2d 53, 60 (Del. 1997).

7

## V. CONCLUSION

Considering the foregoing, GWS's motion is **DENIED**, without prejudice. After discovery, should the relationship between GWS and Dorman be more fully developed and clarified, GWS is free to file whatever motions it deems appropriate.

**IT IS SO ORDERED.**

Richard F. Stokes, Judge

FILED PROTHONOTARY
SUSSEX COUNTY
2021 JAN 22 A 9:36