MBIA INSURANCE CORPORATION and Wells Fargo Bank Minnesota, N.A. as Trustee of SFC Grantor Trust, Series 2000–1, SFC Grantor Trust, Series 2000–2, SFC Grantor Trust, Series 2000–3, SFC Grantor Trust, Series 2000–4, SFC Grantor Trust, Series 2001–1, SFC Grantor Trust, Series 2001–2, SFC Grantor Trust, Series 2001–3, and SFC Grantor Trust Series 2001–I, Plaintiffs,

v.

ROYAL INDEMNITY COMPANY, Defendant.

No. CIV.A.02–1294–JJF.

United States District Court, D. Delaware.

March 31, 2003.

608

David C. McBride, John W. Shaw, Christian Douglas Wright, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Proskauer Rose LLP, New York, NY (Ronald S. Rauchberg and Steven E. Obus, of counsel), for Plaintiffs.

Lawrence C. Ashby, Philip Trainer, Jr., Tiffany L Geyer, Ashby & Geddes, Wilmington, DE, Sonnenschein Nath & Rosenthal, New York, NY (Michael H. Barr and Kenneth J. Pfaehler, of counsel), and Alan S. Gilbert, Esquire of Sonnenschein Nath & Rosenthal, Chicago, IL, for Defendant.

## OPINION

FARNAN, District Judge.

Before the Court is Defendant Royal Indemnity Company's Motion to Dismiss Or, In The Alternative, For Stay Pending Disposition of Prior–Filed Action (D.I.5). For the reasons discussed below, the Motion will be denied.

## BACKGROUND

This breach of contract case involves eight insurance policies issued by Defendant Royal Indemnity Company ("Royal") in connection with several thousand student loan transactions purchased by Student Finance Corporation ("SFC"). In eight separate transactions, those loans were pooled and all right, title, and interest in the loans were transferred to trusts of which Plaintiff Wells Fargo Minnesota, N.A. ("Wells Fargo") is the trustee ("Trusts"). The Trusts then issued trust certificates or floating-rate notes ("Trust Certificates") to investors, which entitled the investors to income streams from the underlying loans. The trustee, Wells Fargo, obtained eight insurance policies from Royal ("Policies") securing the payment obligations on the underlying student loans. Specifically, the Policies insured the payment of principal and ninety days' interest in the event of defaults in the underlying student loans. As an additional layer of protection, MBIA Insurance Corporation ("MBIA") issued to the Trusts separate financial guarantee insurance policies ("Guarantees") guaranteeing the Trusts' payment obligations on the Trust Certificates.

On March 20, 2002, SFC, which is now party to an involuntary bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware, disclosed that a significant number of the student loans it pooled and sold were in

default. On June 7, 2002, Royal filed a lawsuit in the District Court of Jefferson County (Beaumont), Texas, (the "Texas Action") [1] seeking rescission of the Policies and a declaratory judgment that there is no coverage under the Policies. Wells Fargo is a named Defendant in the Texas Action, but MBIA is not.

As of May 31, 2002, 24,915 of the student loans pooled in the Trusts insured by the Royal Policies were in default. Accordingly, Wells Fargo, as trustee and as the named beneficiary of the Policies, filed a claim with Royal, dated June 21, 2002, in the amount of $137,653,434.00 ("June 21 Claim"). As of June 28, 2002, an additional 18,456 student loans were in default, and therefore, on June 28, 2002, Wells Fargo filed a second claim with Royal in the amount of $132,208,092.50 ("June 28 Claim").

On July 15, 2002, Wells Fargo and MBIA filed the instant lawsuit against Royal. (D.I.1). Specifically, Wells Fargo, as trustee, asserts claims against Royal for (1) specific performance of the Policies (Second Claim for Relief) and (2) anticipatory breach of contract (Fourth Claim for Relief). *Id.* at 18–21. Additionally, MBIA contends it is a third-party beneficiary of the Royal Policies and asserts claims against Royal for (1) specific performance of the Policies (First Claim for Relief), (2) anticipatory breach of contract (Third Claim for Relief), and (3) promissory estoppel (Fifth Claim for Relief). *Id.* at 17–21. Both Wells Fargo and MBIA also seek punitive damages for Royal's alleged willful breach of the Policies. Royal now moves to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## DISCUSSION

By its Motion, Royal contends the instant case should be dismissed for lack of subject matter jurisdiction because there is no diversity of jurisdiction and because MBIA lacks standing to sue Royal. Royal also contends that Wells Fargo's claims fail to state claims upon which relief can be granted for two reasons: (1) the claims are compulsory counterclaims that must be brought in the Texas action, and (2) Wells Fargo has not adequately alleged an injury from the breach of the Royal Policies. Finally, Royal contends, in the alternative, that the instant case should be stayed in favor of the prior-filed Texas Action. The Court will address each of Royal's contentions in turn.

### I. Does the Court Have Subject Matter Jurisdiction?

#### A. *Is There Complete Diversity?*

Plaintiffs' Complaint asserts that the Court "has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between parties...." (D.I. 1 at 4). For the purpose of establishing diversity jurisdiction, the parties agree that MBIA is a citizen of New York and that Royal is a citizen of Delaware and North Carolina. However, the parties disagree as to the citizenship of Wells Fargo, a National Banking Association organized and existing under the laws of the United States with its principal place of business in Minnesota.

Section 1332(a) has been interpreted to require complete diversity between each plaintiff and each defendant. *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

---

**1.** *Royal Indemnity Company v. Andrew Yao, et al.,* Case No. D–167,370, 136th Judicial Dist. Ct., Jefferson County, Texas.

For jurisdictional purposes, the citizenship of national banking associations is governed by 28 U.S.C. § 1348, which provides, in pertinent part, that "[a]ll national banking associations shall, for the purposes of all ... actions by or against them, be deemed citizens of the States in which they are respectively located." There are competing, persuasive lines of authority interpreting the word "located" as it is used in Section 1348. *Compare Firstar Bank, N.A. v. Faul,* 253 F.3d 982 (7th Cir.2001) (holding that a national bank is located for purposes of Section 1348 only where it has its principal place of business and in the state designated in its organization certificate) *and Financial Software Systems, Inc. v. First Union National Bank,* 84 F.Supp.2d 594 (E.D.Pa.1999) (holding same) *with Connecticut National Bank v. Iacono,* 785 F.Supp. 30 (D.R.I.1992) (holding that a national bank is located for purposes of Section 1348 where it maintains a substantial presence, including either a branch, an officer, or other significant business operations). The United States Court of Appeals for the Third Circuit has not addressed the issue. In the instant case, Plaintiffs contend the Court should adopt the reasoning set forth in the *Firstar Bank* line of cases, and Royal urges the Court to follow the contrary rationale from the *Iacono* line of cases.

The Court, having considered the parties' briefs and reviewed the competing lines of authority, is persuaded by the reasoning in *Firstar Bank* that a national bank is located for purposes of Section 1348 only where it has its principal place of business and in the state designated in its organization certificate. In *Bank of America, N.A. v. Johnson,* a district court faced with the same competing case law explained:

> [T]he Court is persuaded that had Congress intended to alter the interpretation given to the 1882 and 1887 Acts which provided national banks with the

same access to federal courts that state banks and corporations have, it would have used different language when it enacted § 1348 to expressly provide that national banking associations would be deemed citizens of all states in which they have ... a branch office.

186 F.Supp.2d 1182, 1183–84 (W.D.Okla. 2001). This Court agrees. Accordingly, the Court concludes that Wells Fargo is a citizen of Minnesota for jurisdictional purposes and that there is complete diversity between the parties.

### B. *Does MBIA Have Standing?*

Royal contends that the Court lacks jurisdiction over some or all of MBIA's claims because MBIA lacks standing to sue for breach of the Policies. MBIA contends that it is a third party beneficiary to the Policies and as such has standing to bring its specific performance and anticipatory breach claims. Royal contends that MBIA is not a third party beneficiary under the Policies and, consequently, that MBIA's claims should be dismissed under Federal Rules of Civil Procedure ("FRCP") 12(b)(1) or 12(b)(6).

■ "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

■ To qualify as a third party beneficiary of a contract under Delaware law, a party must demonstrate the following:

> (a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit the third party must be a material part of the parties' purpose in enter-

ing into the contract. Thus, if it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract.

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 196 (3d Cir.2001) (citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378, 1386 (Del.Super.1990)) (internal citations omitted).

■ Royal presents three arguments in support of its contention that MBIA is not a third party beneficiary to the Policies. First, Royal contends that the Complaint fails to allege that Royal intended to confer third-party benefits upon MBIA by entering into the Policies. Royal contends that Wells Fargo and SFC signed agreements, which Royal was not a party to, that purported to confer third party beneficiary status on MBIA but that those agreements do not represent Royal's intent and thus do not make MBIA a third party beneficiary of the Policies. Second, Royal contends that the Complaint does not aver that any benefit was conferred to MBIA under the Policies in satisfaction of a pre-existing obligation or as a gift, and therefore, the Complaint fails to set forth an essential element of MBIA's third-party contract claim. Third, Royal contends that because the Policies were not issued for MBIA's direct benefit, MBIA is only an indirect or incidental beneficiary of the Policies that has no standing to bring this action.

In response, Plaintiffs contend that the allegations in the Complaint are sufficient to withstand a motion to dismiss. Specifically, Plaintiffs contend their bald asser-

tion that "MBIA is an intended third-party beneficiary of each of the Royal Policies," (D.I. 1 at 11) satisfies the liberal pleading requirements of FRCP 8 because there is no requirement that supporting evidence or reasoning be included in the Complaint. Additionally, Plaintiffs contend that their citation to relevant language from the Policies and Guarantees demonstrates that MBIA is an intended beneficiary of the Policies. In particular, Plaintiffs contend that Section X of each of the Policies, which provides that the terms of the Policies shall not be "waived, changed, modified or amended unless ... consented to in writing by the Beneficiary and MBIA," demonstrates Royal's intent to benefit MBIA. (D.I.17, Ex. 5, § X). Moreover, Plaintiffs contend that the Guarantees, to which SFC and Wells Fargo are parties, provide that MBIA "shall have all rights of a third-party beneficiary in respect of ... other Transaction Document[s] [including the Royal Policy] to which it is not a party." (D.I. 18, Ex. 12 at § 4.04(e)). In sum, Plaintiffs contend that a material part of the Policies' purpose is to confer a beneficial effect on MBIA, which suffices to make MBIA a third-party beneficiary of the Policies under Delaware law.

■ Initially, the Court observes that "[t]here is no heightened pleading standard for third-party beneficiary claims." *Saudi Basic Industries Corp. v. Exxonmobil Corp.,* 194 F.Supp.2d 378, 415 (D.N.J. 2002). In their Complaint, Plaintiffs have alleged that MBIA is a third-party beneficiary of the Policies, and that the language of the Policies demonstrates Royal's intent to benefit MBIA. (D.I. 1 at 11, 13). Therefore, as required under *Warth,* the Court accepts as true the allegations in the Complaint and concludes that Plaintiffs' allegations are adequate to avoid dismissal at this stage of the proceedings.[2] *See* Fed.

---

**2.** For the same reasons, and because Royal's arguments as to MBIA's promissory estoppel

claim were raised for the first time in its

R.Civ.P. 8(a); *see also Saudi Basic Industries Corp.*, 194 F.Supp.2d at 415("Exxon has alleged that it is a third-party beneficiary of the Joint Venture Agreements; that is sufficient at this stage in the litigation.").

## II. Does Plaintiffs' Complaint State a Claim?

Royal contends that Wells Fargo's claims fail to state claims upon which relief can be granted for two reasons: (1) the claims are compulsory counterclaims that must be brought in the Texas action, and (2) Wells Fargo has not adequately alleged an injury from the breach of the Royal Policies.

### A. *Standard of Review*

■ The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm*, 835 F.2d at 1011; *see also Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Jordan*, 20 F.3d at 1261.

Reply Brief (D.I.33), the Court will not dismiss MBIA's promissory estoppel claim.

**3.** Texas law provides that a "special appearance shall be made by sworn motion filed

### B. *Are Wells Fargo's Claims Compulsory Counterclaims In The Texas Action?*

■ Wells Fargo is a defendant in the prior-filed Texas Action commenced by Royal. By its Motion, Royal contends that under Texas law, Wells Fargo's claims in the instant case are compulsory counterclaims to the claims raised against it in the Texas Action. Royal further contends that under Texas law, a defendant's failure to assert a compulsory counterclaim precludes its assertion in later actions; such claims, if filed in Texas state court, would be dismissed. Royal notes that at least two United States District Courts have dismissed claims that should have been filed as compulsory counterclaims in prior-filed state court actions. *Conopco, Inc. v. Roll Int'l Corp.*, 75 F.Supp.2d 196 (S.D.N.Y.1999) (dismissing claims under FRCP 12(b)(6) based on California's substantially similar compulsory counterclaim rule); *Hampton v. Long*, 686 F.Supp. 1202 (E.D.Tex.1988) (granting summary judgment based on Texas' compulsory counterclaim rule). Therefore, Royal contends that the Court, acting out of deference to the Texas forum and to avoid duplicative lawsuits, should dismiss Wells Fargo's claims.

■ In response, Wells Fargo contends that under Texas law, a counterclaim is not compulsory if the claim is pending in another court before the answer is filed. Wells Fargo contends that its claims were asserted in this Court before Wells Fargo's answer was due in the Texas Action, and therefore, its claims are not compulsory counterclaims under Texas law. Additionally, Wells Fargo contends that it has filed a special appearance in the Texas Action contesting the court's jurisdiction, and under Texas law, Wells Fargo would waive its right to contest jurisdiction by filing a counterclaim.[3] Therefore, Wells

prior to motion to transfer venue or any other plea, pleading or motion; provided however,

Fargo contends that even if its claims are compulsory counterclaims, it need not file such claims until the Texas court resolves the jurisdictional issue.

 Texas Rule of Civil Procedure 97(a), which governs compulsory counterclaims, provides:

A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction; provided, however, that a judgment based upon a settlement or compromise of a claim of one party to the transaction or occurrence prior to a disposition on the merits shall not operate as a bar to the continuation or assertion of the claims of any other party to the transaction or occurrence unless the latter has consented in writing that said judgment shall operate as a bar.

Tex.R. Civ. P. 97(a). Thus, for a claim to be considered a compulsory counterclaim under Texas law, it must first be "within the jurisdiction of the [Texas] court." *Id.* Wells Fargo contends that the Texas court does not have jurisdiction over it and has entered a special appearance to contest the Texas court's jurisdiction. If Wells Fargo is not subject to the jurisdiction of the Texas court, then its claims are not compulsory counterclaims under Texas law and this Court could grant relief to Wells Fargo. Thus, because Wells Fargo could demonstrate it is not subject to jurisdiction in Texas, and by extension that its claims

are not compulsory counterclaims under Texas law, the Court will refrain from dismissing Wells Fargo's claims at this time.

C. *Has Wells Fargo Adequately Alleged an Injury?*

 Royal contends that Wells Fargo has not adequately alleged a legally cognizable injury from Royal's alleged breach of the Policies. A cognizable injury is an essential element of a breach of contract claim, and because Wells Fargo has not alleged such an injury, Royal contends that Wells Fargo has not stated a claim upon which relief can be granted. Royal asserts that Wells Fargo is not injured because if Royal does not pay claims under the Policies, then MBIA will be required to pay the holders of the Trust Certificates under the Guarantees. Therefore, Royal contends the holders of the Trust Certificates, who are the ultimate beneficiaries of the Policies, will be made whole by MBIA if Royal does not pay on the Policies, and consequently, there is no cognizable injury to support Wells Fargo's claim for breach of contract.

In response, Wells Fargo contends that it has suffered a cognizable injury despite MBIA's obligation to pay the Trust Certificate holders because Royal's obligation to pay claims under the Policies is absolute, unconditional and irrevocable. Additionally, Wells Fargo contends, by analogy to the collateral source rule, that dismissing its claims would give Royal a windfall.

The Court is inclined to accept the hypothesis that if MBIA paid the Guarantees and thereby made Wells Fargo and the Trust Certificate holders whole, Wells Fargo would have no legally cognizable injury

that a motion to transfer venue and any other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance...." Tex.R. Civ. P. 120a(1). Therefore, Wells Fargo's contention is without merit because filing a counterclaim does not waive its ability to contest jurisdiction.

upon which to base an action for breach of contract. However, the problem with Royal's argument is that it is based on a hypothetical set of facts. The Court finds no showing nor allegation in the record that MBIA has actually paid the Guarantees, and unless or until that event occurs, the Court concludes that Wells Fargo has adequately alleged an injury. Accordingly, the Court will deny Royal's Motion to Dismiss.

## III. Is a Stay Warranted?

 The United States Supreme Court noted in *Colorado River Water Conservation District v. United States*,[4] that "the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" 424 U.S. at 817, 96 S.Ct. 1236. Therefore, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 817, 96 S.Ct. 1236. However, in certain exceptional circumstances, a federal court may dismiss or stay an action in favor of a prior-filed state action. *Colorado River*, 424 U.S. at 816, 96 S.Ct. 1236.

 "A threshold issue that must be decided in any *Colorado River* abstention case is whether the two actions are 'parallel.' If they are not, then the district court lacks the power to abstain.... Generally, cases are parallel when they involve the same parties and claims." *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir.1997) (citations omitted). In deciding if the case before it merits abstention due to parallel state-court litigation, the federal court's decision "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance being heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765

(1983). Various factors that have been considered by courts include:

> the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained by the concurrent forums, the existence of a federal policy militating either in favor or against such a stay, the identity of issues in the two forums or lack thereof, and the existence of an important countervailing federal interest which federal courts might be more likely than state courts to respect or enforce.

*Gilbane Bldg. Co. v. Nemours Found.*, 568 F.Supp. 1085, 1089 (D.Del.1983) (citations omitted).

 Royal contends the Court should stay the instant case in light of the prior filed Texas Action. Royal, as the moving party, bears the heavy burden of justifying a stay. *Gilbane Bldg. Co.*, 568 F.Supp. at 1088. Royal contends that because the claims asserted in this action and the Texas Action are essentially mirror images of each other, the two actions are parallel. In response, Wells Fargo contends the two actions are not parallel actions because they involve different parties: (1) MBIA is a plaintiff in this action but is not a party to the Texas Action, and (2) approximately twenty-eight defendants in the Texas Action are not parties to this action. Additionally, Wells Fargo contends the actions are not parallel because the Texas Action is essentially a fraud action whereas this action pertains to breach of contract claims and contract interpretation.

After reviewing the record and the parties' submissions, the Court concludes that Royal has not demonstrated that this action and the Texas Action are parallel. The fact that the two actions involve differ-

4. 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

ent parties and distinct claims persuades the Court that the actions are not parallel. *See e.g., General Refractories Co. v. Fireman's Fund Ins. Co.,* 2002 WL 376923, \*2 (E.D.Pa. Feb.28, 2002); *Steiert v. Mata Services, Inc.,* 111 F.Supp.2d 521, 527 (D.N.J.2000); *Katz v. Food Sciences Corp.,* 1999 WL 387154, \*4 (E.D.Pa. May 6, 1999). Accordingly, the Court will deny Royal's Motion to Stay.

 Even if the Court were persuaded that the cases are parallel cases, the Court concludes that Royal has not met its heavy burden of showing this is an exceptional case warranting abstention. Royal relies largely on the argument that this action should be stayed to avoid piecemeal litigation. The argument is without merit. Staying this action would likely cause piecemeal litigation rather than avoid it. First, MBIA is not a party to the Texas Action and would likely seek redress in a separate lawsuit. Additionally, in this action, which is likely to be resolved on issues of contract interpretation, there are fully-briefed, pending motions for summary judgment. Moreover, because of the pending issues regarding the Texas court's jurisdiction over Wells Fargo and Wells Fargo's alleged intent to seek a transfer of the Texas Action to the District of Delaware, staying this case would unduly delay the resolution of issues properly before the Court that appear ripe for decision.

## CONCLUSION

For the reasons discussed, the Court will deny Defendant Royal Indemnity Company's Motion to Dismiss Or, In The Alternative, For Stay Pending Disposition of Prior–Filed Action (D.I.5).

An appropriate Order will be entered.

## *ORDER*

At Wilmington this 31st day of March 2003, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that Defendant Royal Indemnity Company's Motion to Dismiss Or, In The Alternative, For Stay Pending Disposition of Prior–Filed Action (D.I.5) is *DENIED*.