**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-2086

CYNTHIA MICHELLE SESSOMS, Individually and on Behalf of all Others Similarly Situated,

Plaintiff – Appellee,

v.

USHEALTH ADVISORS, LLC,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:24-cv-00580-BO-BM)

Argued:  May 5, 2026                              Decided:  May 21, 2026
                        Amended:  May 21, 2026

Before KING, WYNN, and THACKER, Circuit Judges.

Reversed and remanded by published opinion.  Judge King wrote the opinion, in which Judge Wynn and Judge Thacker joined.

**ARGUED:**  Jeffrey Aaron Backman, GREENSPOON MARDER LLP, Fort Lauderdale, Florida, for Appellant.  Jacob Lawrence Phillips, JACOBSON PHILLIPS PLLC, Winter Park, Florida, for Appellee.  **ON BRIEF:**  John H. Pelzer, Roy Taub, GREENSPOON MARDER LLP, Fort Lauderdale, Florida, for Appellant.  Manuel S. Hiraldo, HIRALDO P.A., Fort Lauderdale, Florida; David M. Wilkerson, WILKERSON JUSTUS, LLC,

Asheville, North Carolina, for Appellee.

_____

KING, Circuit Judge:

In this interlocutory appeal from the Eastern District of North Carolina, defendant USHealth Advisors, LLC (hereinafter "USHealth"), challenges the district court's adverse August 2025 ruling that plaintiff Cynthia Sessoms's putative class action lawsuit — which alleges a violation of the Telephone Consumer Protection Act (the "TCPA") by USHealth — should not be referred to arbitration under the Federal Arbitration Act (the "FAA"). *See Sessoms v. USHealth Advisors, LLC*, No. 5:24-cv-00580 (E.D.N.C. Aug. 22, 2025), ECF No. 27 (the "Denial Order"). According to the Denial Order, because USHealth is not a third-party beneficiary of an online agreement between Sessoms and a so-called "lead generating service provider" — specifically, a non-party named NextGen Leads, LLC (hereinafter "NextGen") — USHealth is unable to enforce the arbitration clause contained therein, pursuant to applicable Delaware law. As explained below, we are constrained to reject the Denial Order's rationale for refusing to compel arbitration of the TCPA claim alleged by Sessoms against USHealth. And as a result, we therefore reverse the district court's Denial Order of August 2025. We otherwise remand for entry of an order compelling arbitration and staying these federal court proceedings pending arbitration.

I.

A.

As background, in October 2024, plaintiff Sessoms, individually and on behalf of all others similarly situated, filed this putative class action against USHealth in the Eastern District of North Carolina. *See Sessoms v. USHealth Advisors, LLC*, No. 5:24-cv-00580

3

(E.D.N.C. Oct. 9, 2024), ECF No. 1 (the "Complaint"). By her single-count Complaint, Sessoms alleges that, on February 27, 2024, USHealth caused a prerecorded voice message to be transmitted to her cellular telephone offering health insurance information, without USHealth obtaining any prior express consent from Sessoms, in violation of the TCPA.

After answering the Complaint in December 2024, USHealth eventually moved in March 2025 to compel arbitration of Sessoms' TCPA claim. *See Sessoms v. USHealth Advisors, LLC*, No. 5:24-cv-00580 (E.D.N.C. Mar. 5, 2025), ECF No. 18.[1] Therein, USHealth related that, in December 2023 and January 2024, Sessoms had visited a "lead generation" website — operated by the entity called NextGen and its subsidiary, named FirstQuoteHealth — to request health insurance quotes. USHealth alleges that Sessoms, who completed an online form which included a hyperlink listing various "Marketing Partners" as entities from which Sessoms had agreed to receive solicitations, gave her express consent to NextGen to receive telemarketing calls from, inter alia, USHealth.

Although USHealth acknowledged that Sessoms had never signed a contract with USHealth containing an arbitration clause, USHealth maintained that the online "Terms

---

[1] For completeness, we observe that USHealth filed in February 2025 an earlier motion in the district court to compel arbitration. *See Sessoms v. USHealth Advisors, LLC*, No. 5:24-cv-00580 (E.D.N.C. Feb. 13, 2025), ECF No. 15. Therein, USHealth apparently submitted a "a different version of the [at-issue] Terms . . . that expressly stated that marketing partners are third party beneficiaries of the arbitration provision." *See* Br. of Appellant 5. After Sessoms pointed out that such language was not the operative version to which she would have agreed at the time she contracted with NextGen, however, USHealth filed, in March 2025, "a corrected motion and declaration attaching the Terms quoted above, which contain no such third-party beneficiary language." *Id.* Accordingly, in the context of this appeal, our analysis concerns only the propriety of the Denial Order's challenged disposition of USHealth's present March 2025 motion to compel arbitration.

4

and Conditions" — drafted by NextGen and agreed to by Sessoms — contain the applicable and pertinent arbitration clause. Specifically, USHealth claimed that Sessoms had agreed to FirstQuoteHealth's four-page online agreement, which is entitled "Terms of Use." According to USHealth, the Terms of Use had been drafted by NextGen and were otherwise found on FirstQuoteHealth's website, which site is operated by NextGen. Relevant here, the Terms of Use initially state — in bold capital letters — as follows:

> **THESE TERMS AND CONDITIONS . . . ARE A LEGAL AGREEMENT BETWEEN YOU, THE USER, AND US (THE OWNER OR OPERATOR OF THIS WEBSITE) . . . . THIS AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION.**

*See* J.A. 114.[2]

Furthermore, the Terms of Use describe NextGen as a "lead generator" that "receives a fee from third parties for matching your inquiry with them." *See* J.A. 114. The Terms of Use likewise emphasize that NextGen has no role in a transaction between visitors to the FirstQuoteHealth website (i.e., Sessoms) and pertinent third parties (i.e., USHealth):

> [1] NextGen is not a licensed insurance provider, does not offer any insurance products or services, and has no responsibility for any products or services you may purchase or obtain from third parties who receive your information. That is a contract or transaction solely between you and them.
>
> [2] You agree that NextGen is not to be liable for any loss or damage for any information, products and services offered by third parties to you.

*Id.* at 114-115.

---

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

Meanwhile, the arbitration clause — which was also contained in the Terms of Use that were agreed to by Sessoms on FirstQuoteHealth's website — states as follows:

> **CONSENT TO ARBITRATE** – Except where prohibited by law, You and we agree that all claims, disputes or controversies arising out of or relating to the use of this website, to the services provided by NextGen, any consents you have provided to us, or to any acts or omissions for which you may contend NextGen or its affiliates, members, officers or directors is liable relating thereto or to the information, products, or services of third parties, shall be finally, and exclusively, settled by binding arbitration.

*See* J.A. 116.

Against this backdrop, USHealth maintained in the underlying proceedings that arbitration of all issues is warranted. According to USHealth, Sessoms and NextGen's arbitration clause incorporated the American Arbitration Association's (the "AAA") Rules, and delegated all arbitrability questions — including whether USHealth could enforce such a clause — to an arbitrator. USHealth alternatively maintained that, if the district court is clothed with the authority to decide whether USHealth could enforce the arbitration clause, USHealth would be permitted to do so as a third-party beneficiary under Delaware law.

Opposing USHealth's motion to compel arbitration, Sessoms relied on our Court's recent decisions in *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279 (4th Cir. 2023), and *Isernia v. Danville Regional Medical Center*, 2024 WL 2131522 (4th Cir. May 15, 2024), for the proposition that a federal district court — not an arbitrator — must decide an issue of whether a non-signatory to an agreement may enforce an arbitration clause, even when such an agreement delegates other arbitrability issues to the arbitrator. Sessoms further maintained that, pursuant to applicable Delaware law and the plain language of both the

6

Terms of Use and the arbitration clause, USHealth was — at most — an "incidental beneficiary," without any rights to enforce the relevant arbitration clause.

B.

By its six-page Denial Order of August 2025, the district court denied USHealth's motion to compel arbitration of Sessoms' TCPA claim. After summarizing the controlling legal principles, the Denial Order first rejected USHealth's contention that an arbitrator — rather than the court — should decide whether USHealth could enforce the agreement between Sessoms and NextGen (i.e., the Terms of Use), including the arbitration clause. Relying on our Court's 2023 precedent in *Tug Hill*, the Denial Order reasoned that

> the Fourth Circuit has made clear that a court, not an arbitrator, must determine whether a non-signatory to an agreement that contains an arbitration provision can enforce that provision against a signatory [thereto].

*See* Denial Order 3 (citation modified). The Denial Order thus had little difficulty ruling that the court "must decide whether [USHealth] may compel arbitration of [Sessoms'] claim as a third-party beneficiary of [her] [a]greement" with NextGen. *Id.* at 4.

Turning to the "merits of the [arbitration] issue," the Denial Order then assessed whether, pursuant to governing Delaware law, USHealth is a third-party beneficiary of the agreement between Sessoms and NextGen, as memorialized in the Terms of Use that Sessoms agreed to on FirstQuoteHealth's website. *See* Denial Order 4. The Denial Order initially observed that, in Delaware, "the intention of the contracting parties is paramount in determining whether others have standing as third-party beneficiaries." *Id.* (citation modified). From there, the Denial Order recognized that the First State's controlling law requires a party to establish itself as a third-party beneficiary by demonstrating that:

7

[(1)] "the contracting parties . . . intended that the third[-]party beneficiary benefit from the contract"; [(2)] "the benefit [was] intended as a gift or in satisfaction of a pre-existing obligation to that person"; and [(3)] "the intent to benefit the third party [was] a material part of the parties' purpose in entering into the contract."

*Id.* at 5 (citation modified) (quoting *MBIA Ins. Corp. v. Royal Indem. Co.*, 294 F. Supp. 2d 606, 612 (D. Del. 2003)); *see also, e.g.*, *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 196 (3d Cir. 2001) (citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378, 1386 (Del. Super. 1990)).

In concluding that USHealth is not a third-party beneficiary of the Terms of Use agreement between Sessoms and NextGen — such that USHealth cannot enforce the arbitration clause contained therein — the Denial Order reasoned, in full, as follows:

First, the Court determines that [USHealth] correctly argues that it was an intended beneficiary of the Agreement. While [USHealth] is not mentioned by name, the Terms and Conditions, which the Court considers as a whole, expressly refer to third parties and marketing partners, and the Site is clear that when a user submits her information, that user is agreeing to be contacted by third parties in response to the Site user's request. [USHealth] also maintains that the benefit it received from the contract between Sessoms and NextGen "was a material aspect of the agreements at issue" because the language about third parties in the Agreement "necessarily refers" to "NextGen's commercial understanding and arrangement with each of the marketing partners, including [USHealth], about providing consent-based leads subject to an arbitration agreement." However, [the third element] of the *MBIA* test establishes that merely benefitting from a contract is not sufficient to become a third-party beneficiary under Delaware law. [USHealth] mistakenly assumes that because it benefits from the Agreement, the benefit was material to Sessoms' and NextGen's purpose in contracting. While [USHealth] does benefit from the Agreement in this case, it is equally clear that NextGen would have contracted with Sessoms even if it could not include the benefit to [USHealth]. Thus, the benefit was not material to the purpose of their contract, and [USHealth] is not a third-party beneficiary under Delaware law. *See also Isernia v. Danville Reg'l Med. Ctr., LLC*, 2024 WL 4697681, at *7 (W.D. Va. Nov. 6, 2024) (applying Virginia law).

8

*See* Denial Order 5-6.  Consequently, the Denial Order rejected USHealth's attempt to compel arbitration and denied a stay of the district court proceedings pending arbitration.

\* \* \*

From the Denial Order, USHealth timely noticed this interlocutory appeal in September 2025.  And we possess appellate jurisdiction pursuant to § 16 of the FAA, insofar as the Denial Order is plainly one that "refus[es] to direct arbitration to proceed." *See Geneva Enters., LLC v. Chavez*, 173 F.4th 64, 70 (4th Cir. 2026) (recognizing that § 16 of FAA "allows a court of appeals to consider and resolve an interlocutory appeal from a court order refusing to direct arbitration to proceed"); *accord In re Pisgah Contractors, Inc.*, 117 F.3d 133, 135 (4th Cir. 1997) (observing that court of appeals has "jurisdiction to consider an appeal from an interlocutory order denying a motion to compel arbitration").

## II.

We review de novo a district court's order denying a motion to compel arbitration under § 4 of the FAA.  *See Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 726 (4th Cir. 2025); *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 205 (4th Cir. 2025).  To that end, "[t]he question of who decides arbitrability — the court or the arbitrator — is one we [also] review de novo." *See Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020).

## III.

On appeal, USHealth maintains that the Denial Order erred in refusing to compel arbitration.  Specifically, USHealth advances two primary appellate contentions in favor of

9

reversal. First, USHealth argues that an arbitrator — not the district court — should have decided the threshold issue of whether USHealth is entitled to enforce the arbitration clause in the Terms of Use that Sessoms agreed to with NextGen. Second, USHealth asserts that, if such a question is within the province of the court, then the Denial Order nevertheless erred as a matter of Delaware law in concluding that USHealth is not a third-party beneficiary of the agreement (i.e., the Terms of Use) between Sessoms and USHealth.

In these circumstances, we are constrained to reject as foreclosed USHealth's appellate contention that an arbitrator should decide whether USHealth can enforce the arbitration provision in the agreement between Sessoms and NextGen. That conclusion notwithstanding, we agree with USHealth that the Denial Order erred under Delaware law in concluding that USHealth is not a third-party beneficiary of the Terms of Use Sessoms agreed to with NextGen via the FirstQuoteHealth website, and that USHealth therefore cannot enforce the arbitration clause as recited therein against Sessoms' TCPA claim.

### A.

As background, the FAA "provides for the enforcement of agreements to arbitrate when they are created by contract, and such contracts must be treated like any other contract under applicable state law." *See Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 285 (4th Cir. 2023) (citation modified). To that end, "[t]he Supreme Court has recognized . . . that arbitration obligations are grounded in contract law, including by emphasizing recently that under the FAA, 'arbitration agreements [are] as enforceable as other contracts, but not more so.'" *Id.* at 286 (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (explaining that prior Supreme Court recognition of federal "policy favoring arbitration" was "merely

10

an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," and that "the federal policy is about treating arbitration contracts like all others, not about fostering arbitration" (citation modified))).

Furthermore, § 4 of the FAA allows a party to an arbitration agreement to enforce that agreement by petitioning a district court for an order compelling arbitration. Pursuant to that statutory provision, arbitration will be compelled by a district court if (1) "the parties have entered into a valid agreement to arbitrate," and (2) "the dispute in question falls within the scope of the arbitration agreement." *See Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir. 2015); *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). Of relevance here, the Supreme Court has explained that "those who are not parties to a written arbitration agreement" may be entitled to relief under the FAA "[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629, 631 (2009) (quoting 21 Richard A. Lord, Williston on Contracts § 57:19, at 183 (4th ed. 2001)).

## B.

To recap once more, USHealth first argues that an arbitrator — and not the district court — should have decided whether USHealth could enforce the arbitration clause in the agreement between Sessoms and NextGen. Second, USHealth asserts that, if that question instead falls within the purview of the district court, the Denial Order erred as a matter of

11

Delaware law in concluding that USHealth is not a third-party beneficiary of the Terms of Use agreement between Sessoms and USHealth.  We address each contention in turn.[3]

1.

USHealth's first appellate contention is that the Denial Order is infected from the outset because the district court should have withheld a ruling on the threshold arbitrability issue — that is, whether USHealth could enforce the arbitration clause in the Terms of Use agreement between Sessoms and NextGen?  According to USHealth, because of the delegation provision contained therein, such an issue must be resolved by an arbitrator.

Put simply, we are constrained to disagree with that USHealth assertion because it is squarely foreclosed by our Court's precedent.  To be sure, in *Rogers v. Tug Hill*, our colleague Judge Niemeyer recognized that, pursuant to the Supreme Court's 2009 decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629, 631 (2009) — and otherwise emanating from § 2 of the FAA's grounding of arbitration obligations as being in contract law — "it is a court, not an arbitrator, that *must* initially decide whether a nonparty to an arbitration agreement [i.e., USHealth] is entitled to enforce it."  *See Tug Hill*, 76 F.4th at 286 (emphasis added).  As Judge Niemeyer cogently explained in that very respect:

---

[3] USHealth alternatively suggests on appeal that "to the extent the district court did not find [that USHealth] had convincingly established its third-party beneficiary status, at a minimum the record revealed a genuine issue regarding that material fact, and the district court was required to order a trial on that issue under 9 U.S.C. § 4."  *See* Br. of Appellant 13.  But we need not reach this alternative ground for reversal because, as explained *infra*, we are satisfied that USHealth is a third-party beneficiary of the Terms of Use agreement between Sessoms and NextGen and can thus enforce the arbitration clause against Sessoms.

12

> [W]hen an objection is properly raised that the party seeking to enforce an arbitration agreement is not itself a party to that agreement, *the district court* must determine — as a condition precedent to the entry of any § 3 stay or § 4 order compelling arbitration — whether that party is entitled to enforce the arbitration agreement under state contract law. Otherwise, a party with no contractual right to compel arbitration might be permitted to do just that. And nothing in the FAA, or the Supreme Court's jurisprudence interpreting it, allows such a counterintuitive result — a result that would undermine the contractual foundation of the order compelling arbitration.

*Id.* at 287; *accord Isernia v. Danville Regional Medical Center*, 2024 WL 2131522 (4th Cir. May 15, 2024) (concluding that, pursuant to our Court's *Tug Hill* precedent, "a court, not an arbitrator, must determine whether a non-signatory to an agreement that contains an arbitration provision can enforce that provision against a signatory to the agreement").

Despite those sound legal principles, USHealth offers up a smattering of assertions — each unavailing — as to why our Court's *Tug Hill* decision is "dead to rights." *See, e.g.*, Br. of Appellant 15-30.   But even if we agreed with that premise, we would yet be bound by the *Tug Hill* precedent, pursuant to the principle enunciated in *McMellon v. United States*, 387 F.3d 329 (4th Cir. 2003) (en banc).   As Judge Traxler explained for our en banc Court in *McMellon*, although "a three-judge panel has the statutory and constitutional power to overrule the decision of another three-judge panel," in this Circuit — "as a matter of prudence" — "a three-judge panel of this court should not exercise that power." *Id.* at 334.   Rather, "the first case to decide [an] issue is the one that must be followed, unless and until it is overruled by this court sitting en banc or by the Supreme Court." *Id.*

In these circumstances, we are of opinion that the Denial Order — which faithfully applied our Court's controlling 2023 decision in *Tug Hill* — contains no error of law, and it correctly concluded that the district court, rather than an arbitrator, should decide the

13

threshold issue of whether USHealth, as a non-party to the Terms of Use agreement between Sessoms and NextGen, can enforce the arbitration clause contained therein against Sessoms. That being so, we turn to USHealth's second appellate contention.

2.

a.

Given that the Denial Order properly applied *Tug Hill* and determined that it was obliged to decide whether USHealth — as a third-party beneficiary — is entitled to enforce the arbitration clause contained in the Terms of Use agreement, the residual merits issue is whether the Denial Order correctly decided that USHealth cannot enforce the agreement in an effort to compel arbitration. That issue, the Denial Order correctly recognized, is the question of whether USHealth is a third-party beneficiary under applicable Delaware law.[4]

The First State's relevant law is that "the intention of the contracting parties is paramount in determining whether others have standing as third-party beneficiaries." *See Hadley v. Shaffer*, 2003 WL 21960406, at *5 (D. Del. 2003). Importantly, a "third party may benefit from the performance of the contract without acquiring third party beneficiary status." *See Bromwich v. Hanby*, 2010 WL 8250796, at *2 (Del. Super. Ct. 2010); *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *2 (Del. Ch. 2004) (ruling that "incidental beneficiary" does not have standing to enforce agreements). Thus, for a party to establish itself as a third-party beneficiary, it must satisfy Delaware's three *MBIA* elements:

---

[4] There is no dispute that Delaware law applies here because the Terms of Use agreement between Sessoms and NextGen contains a Delaware governing law provision.

14

[1] the contracting parties . . . intended that the third[-]party beneficiary benefit from the contract, [2] the benefit [was] intended as a gift or in satisfaction of a pre-existing obligation to that person, and [3] the intent to benefit the third party [was] a material part of the parties' purpose in entering into the contract.

*See MBIA Ins. Corp. v. Royal Indem. Co.*, 294 F. Supp. 2d 606, 612 (D. Del. 2003); *see also, e.g.*, *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 196 (3d Cir. 2001) (specifying same three factors) (citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378, 1386 (Del. Super. 1990))).

b.

In this light, the Denial Order ruled that, on the first *MBIA* element, USHealth "correctly argue[d] that it was an intended third[-]party beneficiary of the Agreement" between Sessoms and NextGen. *See* Denial Order 5. In the district court's view, although USHealth "is not mentioned by name, the Terms and Conditions, which the [c]ourt considers as a whole, expressly refer to third parties and marketing partners, and the Site is clear that when a user submits her information, that user is agreeing to be contacted by third parties in response to the Site user's request." *Id.* As to the second *MBIA* element — that "the benefit [was] intended as a gift or in satisfaction of a pre-existing obligation to that person," *see* 294 F. Supp. 2d at 612 — the court deemed the benefit to USHealth as being "a material aspect of the agreements at issue because the language about third parties in the [a]greement necessarily refers to NextGen's commercial understanding and

15

arrangement with each of the marketing partners, including [USHealth], about providing consent-based leads subject to an arbitration agreement." *Id.* (citation modified).[5]

Where the Denial Order parted ways with USHealth — and ultimately erred in our view — was in concluding that, although USHealth "does benefit from the Agreement in this case . . . it is equally clear that NextGen would have contracted with Sessoms even if it could not include the benefit to" USHealth. *See* Denial Order 6. In light of that cursory assessment of the issue, the Denial Order maintains that any "benefit [to USHealth] was not material to the purpose of [the] contract" between Sessoms and NextGen (i.e., the Terms of Use), such that USHealth is not a third-party beneficiary under applicable Delaware law, and therefore cannot enforce the arbitration clause against Sessoms. *Id.*

c.

Put simply, we agree with USHealth that the Denial Order's reasoning is erroneous on the third *MBIA* element. That is so because Delaware law requires a showing that "the beneficial effect to the third party" — here, its marketing partners (such as USHealth) — is "material to the purpose of the contract." *See Comrie*, 2004 WL 293337, at *4. Put differently, as USHealth maintains, "this [element] is concerned with whether benefit to the non-signatory [USHealth] was one of the purposes of the signatories entering into the agreement, rather than an incidental effect of doing so." *See* Br. of Appellant 12; *see also Comrie*, 2004 WL 293337, at *4 (explaining that "beneficial effect to the third party" is

---

[5] USHealth does not quarrel with the district court's determination that USHealth satisfied the first and second *MBIA* elements. Nor does Sessoms. Rather, Sessoms — rightfully so, as the appellee — defends the court's reasoning on the third *MBIA* element.

distinguishable from "a benefit to that party" that, while "intended," "is merely a means through which the benefit that motivated the contract was sought to be achieved for the signatories"). Framed in that manner, it is apparent that NextGen needed the third-party marketing partners (like USHealth) to provide the requested insurance quotes to interested persons (i.e., Sessoms), since NextGen itself did not provide any insurance quotes — but merely provided its marketing partners with consent-based leads.

In our view, the Delaware Court of Chancery's unpublished — yet highly persuasive — 2004 decision in *Comrie* is illustrative of why USHealth is a third-party beneficiary of the Terms of Use agreement between Sessoms and NextGen. In the *Comrie* case, the Court concluded that the grant of options to certain non-signatory employees was a material part of the purpose of a stock purchase agreement. That was so, according to the Court, not because the signatories would not have entered into the stock purchase agreement without that third-party benefit, but because e-mails and other extrinsic evidence revealed that "the purpose of the [sellers] in entering into the contract included conferring a benefit to the employees," thus satisfying the third *MBIA* element. *See Comrie*, 2004 WL 293337, at *5.

Like in *Comrie*, the benefit of third-party marketing partners in this situation (such as USHealth) is clearly within the scope of the Terms of Use agreement. To that end, the Denial Order agreed with USHealth that both the FirstQuoteHealth website and its Terms of Use make clear that "when a user submits her information, that user is agreeing to be contacted by third parties in response to the site user's request" for insurance quotes. *See* Denial Order 5. And because NextGen is not in the business of providing insurance quotes, such quotes are provided — at the user's request (i.e., Sessoms) and to the user's benefit

17

— vis-à-vis "commercial understanding[s] and arrangement[s] with each of the [NextGen] marketing partners, including [USHealth], about providing consent-based leads subject to an arbitration agreement." *See* J.A. 112. From this, and parting ways with the summary reasoning of the Denial Order, we are satisfied that the benefit of USHealth was "material to the purpose of the" Terms of Use agreement. *See Comrie*, 2004 WL 293337, at *4.

\* \* \*

At bottom, the Denial Order correctly determined that the district court should resolve whether USHealth can enforce the arbitration clause as a third-party beneficiary of the agreement between Sessoms and NextGen, pursuant to our 2023 *Tug Hill* precedent. Despite that solid ruling, however, the Denial Order nevertheless erred in concluding that USHealth is not entitled to enforce that arbitration clause against Sessoms' TCPA claim.

IV.

Pursuant to the foregoing, we reverse the Denial Order and remand for entry of an order compelling arbitration and staying these proceedings pending arbitration.

*REVERSED AND REMANDED*

18